IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

WILLIE MAE JOHNSON                                                                     PLAINTIFF

V.                                          CASE NO. 14-CV-01044

TOMMY PATTERSON; and
MAXINE CANTERBERRY                                                                   DEFENDANTS

## MEMORANDUM OPINION

Before the Court are two motions filed by Separate Defendant Tommy Patterson: (1) a Motion for Partial Summary Judgment; and (2) a Motion for Judgment on the Pleadings. ECF Nos. 38, 41. Also before the Court is Separate Defendant Maxine Canterberry's Motion Adopting Arguments and Brief of Separate Defendant Tommy Patterson. ECF No. 43. Plaintiff has responded. ECF Nos. 44, 45. The Court finds this matter ripe for consideration.

## I. BACKGROUND

Plaintiff filed her Complaint (ECF No. 1) on August 13, 2014, and later filed an Addendum on September 9, 2014 (ECF No. 6).[1] Plaintiff bases her right to relief on the allegation that Separate Defendants, in their capacities as real estate agents, each refused to sell her a home or altered the price of a home because she is disabled. ECF Nos. 1, 6. Plaintiff claims that she is disabled in that she has "artificial heart valves" and was also diagnosed with

---

[1] Plaintiff initially filed a form to be used by prisoners in filing suit pursuant to 42 U.S.C. § 1983. The Court is unsure why Plaintiff chose to file this document, as Plaintiff is not a prisoner and it does not appear that Plaintiff seeks to make a § 1983 claim. It is well established that in order to state a claim under § 1983 a plaintiff must, among other things, allege that the person who deprived the plaintiff of a federal right acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Plaintiff's pleadings do not allege that Separate Defendants acted under color of state law. Further, in the Addendum to the Complaint (ECF No. 6) Plaintiff specifically states that she only seeks relief pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*., and the Fair Housing Act, 42 U.S.C. §§ 3604, *et seq*. Out of an abundance of caution, Separate Defendant Tommy Patterson correctly addresses the issue of a § 1983 claim. After a thorough review of the record, the Court, however, is certain that Plaintiff does not intend to make a claim pursuant to 42 U.S.C. § 1983 and, therefore, will not address that issue.

schizophrenia and has received disability benefits on that basis since the late 1990s. ECF No. 6, ¶ 6. Plaintiff has not provided documentation to support these assertions.

In regard to Separate Defendant Patterson, Plaintiff lodged a complaint with the Arkansas Fair Housing Commission ("AFHC") on November 23, 2012. ECF No. 38-2. Patterson was the listing real estate agent showing a home Plaintiff was interested in and which was listed for $47,000. Plaintiff made an offer on the home for $47,000, but included that the seller would bear up to "$3,000 of Plaintiff's closing costs and prepaids as well as the cost of a new survey, if required, and up to $700 for any repairs." ECF Nos. 38-1, 38-2. The seller refused the offer and made a counteroffer raising the price to $50,000 to account for Plaintiff's demand that she pay $3,000 of Plaintiff's closing costs. ECF No. 38-1. The seller also offered to pay up to $500 for repairs and to split the cost of a new survey. ECF No. 38-1. Separate Defendant Patterson also corrected the legal description in the counteroffer, as Plaintiff had included a legal description covering only part of the property the seller wished to convey. ECF No. 38-1. Plaintiff never responded to the counteroffer. ECF No. 38-1. The home in question was subsequently vandalized and the seller, having relocated to Atkins, Arkansas, and suffering from major health problems, chose to reduce the price to $39,500. ECF No. 38-1. These facts were disclosed to the AFHC and, after an investigation, the AFHC determined that there was no reasonable basis to believe Separate Defendant Patterson had discriminated against Plaintiff. ECF No. 38-1. Plaintiff subsequently filed the present lawsuit.

As for Separate Defendant Canterberry, the record is sparse in regard to factual allegations. Plaintiff's allegations regarding Canterberry appear to consist of vague claims that Canterberry showed Plaintiff a home for sale and asked Plaintiff various questions regarding payment of the purchase price and possible financing. ECF No. 45, pp. 10, 11. The record does

not show, and Plaintiff does not allege, that Plaintiff actually attempted to buy the home Canterberry was showing or that she filed a complaint with the AFHC.

Plaintiff seeks relief pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604, *et seq.* ECF No. 6, ¶ 2. Plaintiff claims that she was injured as a result of Separate Defendants' allegedly discriminatory actions in that the "negative talking . . . killed . . . [Plaintiff's] spirit" and Plaintiff subsequently "lost the ability to care for [herself] due to the mental decline and anxiety the discrimination caused." ECF No. 6, ¶ 3. Initially, in regard to relief, Plaintiff sought "a double wide mobile home [and] a lot to sit it on" along with damages for her pain and suffering. ECF No. 1, ¶ VIII. However, Plaintiff subsequently stated that she only seeks damages in the amount of $3,051,000. ECF No. 19, p. 2.

On December 6, 2016, Separate Defendant Patterson filed his Motion for Judgment on the Pleadings (ECF No. 41) and Motion for Partial Summary Judgment (ECF No. 38). On December 12, 2016, Separate Defendant Canterberry filed her Motion to Adopt Arguments and Brief of Separate Defendant Tommy Patterson (ECF No. 43). Plaintiff filed her response (ECF Nos. 44, 45) to Separate Defendant Patterson's motions on December 13, 2016.

## II. DISCUSSION

As an initial matter, because Separate Defendant Canterberry has adopted the arguments and reasoning presented by Separate Defendant Patterson, the Court, for the sake of clarity, will discuss those arguments as if the Separate Defendants had filed joint motions for judgment on the pleadings and partial summary judgment.

### A. Motion for Judgment on the Pleadings in Regard to Plaintiff's ADA Claims

Separate Defendants Patterson and Canterberry address Plaintiff's ADA claims in their Motion for Judgment on the Pleadings and seek dismissal with prejudice of those claims pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c).

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Pursuant to FRCP 12(h), a party may seek dismissal of a claim for failure to state a claim upon which relief can be granted in a FRCP 12(c) motion for judgment on the pleadings. FED. R. CIV. P. 12(h)(2)(B). Courts analyze motions for judgment on the pleadings under the same standard that governs Rule 12(b)(6) motions. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Under this standard, the Court must assume "that well-pleaded factual allegations in the complaint are true 'and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader.'" *Id*. (quoting *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986)). The Court will not, however, "blindly accept the legal conclusions drawn by the pleader from the facts." *Id*. This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must nudge "their claims across the line from conceivable to plausible." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As noted above, Plaintiff seeks relief pursuant to the ADA as codified at 42 U.S.C. §§ 12101, *et seq*. "The ADA consists of three titles addressing discrimination against the disabled in different contexts." *Gorman v. Batch*, 152 F.3d 907, 911 (8th Cir. 1998). "Title I prohibits

4

employment discrimination, 42 U.S.C. § 12112, Title II prohibits discrimination in the services of public entities, 42 U.S.C. § 12132, and Title III prohibits discrimination by public accommodations involved in interstate commerce such as hotels, restaurants, and privately operated transportation services, 42 U.S.C. §§ 12182, 12184." *Id*. Under Title II of the ADA, a "public entity" is defined as "any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131(1)(A), (B), & (C).

In the case at bar, Plaintiff alleges that Separate Defendant Patterson refused to sell her a home and raised the price of the home on account of her disability. In regard to Separate Defendant Canterberry, Plaintiff alleges that Canterberry was not interested in selling Plaintiff a home due to her disability. As explained above, the ADA applies and protects disabled individuals in three contexts. Title I of the ADA is inapplicable in the present situation because, as Plaintiff explicitly states, she was not employed by either Separate Defendant and did not seek employment with them. ECF No. 6, ¶ 5. Title II is also inapplicable. Plaintiff states that Separate Defendant Patterson is self-employed and that Separate Defendant Canterberry works or worked for a private realty company. ECF No. 6, ¶ 4. Thus, it is clear that Separate Defendants do not qualify as "any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any commuter authority" and, therefore, are not a "public entity." Finally, if Plaintiff seeks relief pursuant to Title III of the ADA, her complaint is subject to dismissal because the only private remedy for violation of Title III is injunctive relief. *Stebbins v.*

*Legal Aid of Ark.*, 512 Fed. Appx. 662, 663 (8th Cir. 2013); *see* 42 U.S.C. § 12188(a). In the present case, Plaintiff only seeks damages, not injunctive relief.

Even under a liberal reading of Plaintiff's factual allegations, it is clear that Plaintiff has failed to state a claim upon which relief can be granted under the ADA with regard to either Separate Defendant Patterson or Canterberry. As such, the Court finds that Plaintiff's ADA claims should be dismissed.

**B. Motion for Partial Summary Judgment in Regard to Plaintiff's FHA Claims**

Separate Defendants Patterson and Canterberry address Plaintiff's FHA claims in their Motion for Partial Summary Judgment.

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna*

6

*Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. Summary judgment is proper where a Plaintiff fails to make out a prima facie case. *See Noland v. Comm. Mortg. Corp.*, 122 F.3d 551, 553 (8th Cir. 1997) ("summary judgment for defendant was correct, because the record contained no evidence that tended to establish the fourth part of [plaintiff's] prima facie case").

Under the FHA, it is unlawful to (1) "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer . . . because of a handicap of . . . that buyer"; or (2) "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person." 42 U.S.C. § 3604(f)(1)(A) & (f)(2)(A).

Claims for discrimination under the FHA are evaluated under the *McDonnell-Douglas* burden-shifting framework. *U.S. v. Badgett*, 976 F.2d 1176, 1178 (8th Cir. 1992). Under that framework Plaintiff must first prove a prima facie case of discrimination by a preponderance of the evidence. *Id*. Next, if the plaintiff carries her initial burden, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the allegedly discriminatory action. *Id*. If the defendant satisfies this burden, the plaintiff then has the opportunity to prove by a preponderance that the legitimate reasons asserted by the defendant are in fact mere pretext. *Id*.

The elements of a prima facie case of discrimination will vary from case to case, depending on the allegations and the circumstances. *Id*. Under the present circumstances, the Court finds that, in order to make out a prima facie disparate treatment claim,[2] Plaintiff must show that (1) she was a member of a protected class, (2) she made an offer and was qualified to purchase the home in question, (3) the offer was rejected despite her qualifications, and (4) the Defendant subsequently sold the home to a non-member of the protected class with similar qualifications. *See Noland*, 122 F.3d at 553 (examining an FHA claim in the context of denial of a mortgage loan); *see also Oti Kaga, Inc. v. S.D. Hous. Dev. Auth.*, 342 F.3d 871, 882-883 (8th Cir. 2003) (examining an FHA claim in the context of denial of state funding).

### i. Member of a Protected Class

In the case at bar, as to the first element, Plaintiff bases her FHA disparate treatment claim on her alleged disability. ECF No. 6, ¶ 6. Plaintiff alleges that she has been diagnosed with schizophrenia and received disability benefits based on that condition since the 1990s. ECF No. 6, ¶ 6. Although courts have found that individuals who meet the definition of disability for purposes of receiving disability benefits also qualify as disabled under the federal disability statutes, *see*, *e.g.*, *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307 (E.D.N.Y. 2012), Plaintiff has not provided any evidence of either (1) her diagnosis or (2) receipt of disability benefits. Therefore, because she has not offered evidentiary support, Plaintiff has failed to establish that she is a member of a protected class.

### ii. Offer and Qualification to Buy

In regard to the second element of Plaintiff's prima facie case, it is undisputed that Plaintiff made an offer on the home Separate Defendant Patterson was showing. As for the

---

[2] The Court will only address the possibility of a disparate treatment claim as, based on a liberal reading of the pleadings, that is the only claim Plaintiff appears to make.

question of whether Plaintiff was "qualified," Patterson notes that other circuits have "defined a 'qualified' purchaser as one who actually meets the terms of the seller." ECF No. 39, p. 4 (citing *McDonald v. Coldwell Banker*, 543 F.3d 498, 503 (9th Cir. 2008)). In the "Exclusive Right-to-Sell Agreement" entered into by Separate Defendant Patterson and the former owner of the home in question, the listing price was set at $47,000. ECF No. 19, p. 5. In the "Real Estate Contract" submitted by Plaintiff as a means of making an offer on the home, Plaintiff offered to pay a purchase price of $47,000. ECF No. 19, p. 13. The offer required "[s]eller to pay up to $3,000 of buyer's closing costs and prepaids." ECF No. 19, p. 15. The offer, further, stated that the buyer and seller would split the costs of title insurance and that "if buyer's lender requires new survey, seller to order and pay for one." ECF No. 19, p. 16. The offer also required the seller to select and pay for a one-year home warranty plan. ECF No. 19, p. 17. Likewise, the offer required the seller to pay up to $700 in repair costs. ECF No. 19, p. 18. The seller, represented by Separate Defendant Patterson, sent Plaintiff a counteroffer, raising the purchase price to $50,000, presumably to account for the $3,000 of closing costs Plaintiff wanted the seller to bear, and making various other changes, though accepting some of Plaintiff's conditions. ECF No. 19, p. 23. Separate Defendant Patterson alleges that Plaintiff never responded to the counteroffer. These facts make clear that, if the Court were to use the definition of "qualified" as put forth by Separate Defendant Patterson, Plaintiff was not "qualified," as she failed to meet the terms of the seller.

Alternatively, Plaintiff appears to argue that she was "qualified" for purposes of making a prima facie discrimination claim because she alleges that she had been approved for a loan through the USDA Rural Development Guaranteed Housing Loan program for an amount over the asking price of $47,000. ECF No. 6, ¶ 1. However, Plaintiff has failed to provide

documentation showing that she was approved for a home loan through the USDA program.[3] Therefore, even under Plaintiff's definition of "qualified," she has failed to satisfy the second element of a prima facie disparate treatment claim.

In regard to Separate Defendant Canterberry, Plaintiff has failed to allege that she offered to buy the home Canterberry showed her. Thus, it is clear that Plaintiff has failed to sufficiently plead this element of a prima facie FHA claim against Separate Defendant Canterberry.

### iii. Rejection of Offer Despite Qualification

Plaintiff has not satisfied the third requirement for the same reasons she has failed to satisfy the second element. In regard to Plaintiff's claim against Separate Defendant Patterson, Plaintiff failed to show, under either definition of "qualified," that she was "qualified" and thus cannot establish that her offer was rejected despite her qualifications. As to Separate Defendant Canterberry, Plaintiff has not alleged that she made an offer.

### iv. Subsequent Sale of Home to Non-Member of the Protected Class With Similar Qualifications

Finally, Plaintiff has not alleged or produced evidence that Separate Defendants Patterson or Canterberry subsequently sold the homes in question to non-members of the protected class with similar qualifications. As such, Plaintiff has failed to satisfy the fourth element of a prima facie case.

Therefore, because Plaintiff has not met her burden of establishing a prima facie discrimination claim under the FHA in regard to Separate Defendants Patterson and Canterberry, they are entitled to judgment as a matter of law.

---

[3] Plaintiff has repeatedly alleged that the documentation showing her approval for a loan under the USDA Rural Development Guaranteed Housing Loan program was sent to, but never returned by, an attorney who decided not to represent Plaintiff in the present litigation. ECF No. 45. The Arkansas Fair Housing Commission, in its determination letter of June 28, 2013, (ECF No. 38-2) noted that Plaintiff had "failed to provide evidence to support" her assertion that she was "prequalified to receive a loan through the USDA Rural Housing Program."

### III. CONCLUSION

For the reasons discussed above, the Court finds that Separate Defendants' Motions for Judgment on the Pleadings and Motions for Partial Summary Judgment should be and hereby are **GRANTED**. Plaintiff's claims under the ADA and FHA in regard to Separate Defendants Tommy Patterson and Maxine Canterberry are hereby **DISMISSED WITH PREJUDICE**. A Judgment of even date consistent with this opinion shall issue.

**IT IS SO ORDERED**, this 30th day of December, 2016.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge